

IN THE UNITED STATES DISTRICT COURT
FOR THE __Northern__ DISTRICT OF OKLAHOMA

DJuan Jackson,                        )
                Petitioner,   )
                                       )
vs.                                   )   Case # 21-CV-0554-JFH-SH
                                       )
SCOTT NUNN, JCCC Warden,              )
                Respondent.  )

**FILED**
APR 0 4 2022
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

### REPLY TO LIMITED RESPONSE

    Comes Now, Petitioner, *pro se*, objecting to Magistrate's Report and Recommendation, alleges and states:

1. Petitioner agrees with Respondent's motion to dismiss Case #CF-2009-2754 from habeas corpus consideration because that sentence is expired.

2. Petitioner avers that Case # CF-2000-6778 was used to enhance CF-2009-2008 and CF-2009-2009 ( see Limited Response, pg. 4) and, under the facts of these cases, Petitioner is "in custody" on all of these cases. (Lackawanna v. Coss, 532 US 394, 401 (2001) Petitioner is pro se and his petition should be construed to state that he is serving sentences CF-2009-2008 and CF-2009-2009 enhanced by CF-2000-6778.

3. Respondent has conceded the facts alleged in the Application for Post-Conviction Relief as stated in the Motion for Summary Disposition. (Limited Response, pg. 5)

### PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS IS TIMELY

#### § 2244(d)(1)(A)

    However, a state may exercise criminal jurisdiction over non-Indians who commit crimes against other non-Indians on the reservation, provided no treaty stipulation or federal statute

1

declares otherwise *(US v. Mcbratney*, 104 US 621 (1881)). Oklahoma could not have acquired jurisdiction over non-Indian-against-non-Indian crimes on the Muscogee (Creek) Nation Reservation because the Oklahoma Enabling Act[1] reserved such jurisdiction to the United States *(McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020) and the treaties between the United States and Muscogee (Creek) Nation reserve jurisdiction to the Tribe and/or the United States. Oklahoma's Constitution itself cedes such jurisdiction to the United States (OK Const, art I § 3). (See "Oklahoma Does Not Have Jurisdiction", *infra*)

"[I]f the [conviction] is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it." (Wilson v. Carr, 41 F2d 704, 706 (9th Cir 1930) AEDPA, therefore, assumes competent jurisdiction for a judgment to become final.

Additionally, the purpose of AEDPA is "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases" and "to further the principles of comity, finality, and federalism." (*Woodford v. Garceau*, 538 US 202, 206 (2003)) Therefore, in the instant case, using a void conviction for purposes of applying AEDPA was not the intent of Congress.

## § 2244(d)(1)(B)

First, as described above, the State District Court is without jurisdiction in cases that occur within the boundaries of the Muscogee (Creek) Nation Reservation; a fact that would clearly appear on the face of the record of the case. Accordingly, any conviction pronounced by a state court regarding such a criminal case would be void *ab initio* and therefore not a

---

[1] *Ex parte Webb*, 225 US 663 (1912)("It will be observed that its 1st section provides that nothing in the constitution of the new state shall be construed ' to the limit or affect the authority of the government of the United States to make any law or regulation respecting such Indians, their lands,, or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if this Act had never been passed.')

2

conviction under law. Such a "conviction" then could never be final under *Matloff* since the conviction does not actually exist.

### § 2244(d)(1)(C)

According to the Oklahoma Court of Criminal Appeals (**OCCA**) ruling affirming denial of relief pursuant to *Matloff v. Wallace*, 2021 OK CR 23, *McGirt v. Oklahoma*, 140 S.Ct. 2452, represents a new rule of criminal procedure announced by the United States Supreme Court. (*Tyler v. Cain*, 121 S.Ct. 2478 (2001)) Keeping this in mind and that US Supreme Court held in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), "where state collateral review proceedings permit prisoners to challenge the lawfulness of their confinement, States cannot refuse to give retroactive effect to a substantive constitutional right that determines the outcome of that challenge;" then, if the OCCA is correct in its analysis, Petitioner's petition is timely, excluding time committed to exhausted state remedies. Here, no constitutional right is more substantive and fundamental than the right to be tried in a court of competent jurisdiction. As early as 1816, the High Court said, "States may not disregard a controlling constitutional command in their own courts." *Martin v. Hunter's Lessee*, 1 Wheat 304, 340-41; *See also Yates v. Aiken*, 484 US 211, 218 (1988) However, if the OCCA ruling is incorrect and *McGirt* simply adjudicates a substantive fact, i.e. that the Muscogee (Creek) Nation reservation continues to exist (*Allen v. Massie*, 236 F.3d 1243 (2001)), then Petitioner's petition is timely under §2244(d)(1)(D). (see below)

### §2244(d)(1)(D)

Petitioner's petition is timely pursuant to §2244(d)(1)(D) because, contrary to OCCA ruling in *Matloff, supra, McGirt* merely adjudicates a substantive fact, i.e. that the Muscogee

(Creek) Nation reservation continues to exist[2]; and that fact establishes the factual predicate to jurisdictional claims related to crimes committed on an Indian reservation[3], as here. (***Douglas v. Workman***, 560 F.3d 1156(2009))

**Equitable Tolling**

AEDPA is not jurisdictional. (***Day v. McDonough***, 547 US 198 (2006)) The statute has a rebuttable presumption in *favor* of equitable tolling. (***Holland v. Florida***, 560 US 631, 645-646) Petitioner is entitled to equitable tolling because of the extraordinary general misunderstanding between federal authorities and state authorities as to whether any reservations continued to exist in Oklahoma. Prosecutors, Judges (who are required to ensure they have jurisdiction before proceeding) and Defense attorneys across the state failed to make such jurisdictional claims for defendants based on crimes occurring allegedly occurring on Indian reservations, federal statutes, or treaty provisions. Prosecutors and state courts erroneously asserted jurisdiction over cases and persons that federal law and federal treaties reserved to other sovereigns. That misunderstanding was not cleared up until the ***McGirt*** decision.

In ***Morales v. Jones***, 417 F. App'x 746, 749 (10th Cir 2011)[4], the Tenth Circuit stated that the petitioner failed to make an argument to differentiate his due process violation based on lack of subject matter jurisdiction from any other due process violation. In the instant case, this due process violation for lack of subject matter jurisdiction is different from other due process violations because (1) it involves the exclusive and plenary power of Congress to confer

---

[2] Using the same rule employed by the Supreme Court, the OCCA has also declared the existence of the Choctaw, Chickasaw, Seminole, Cherokee, and Quapaw reservations.

[3] See 18 USC § 1151-1153, 25 USC § 1301, 1304 and treaties between the US and so-called Five Civilized Tribes.

[4] "To be sure, a prisoner has a due process right to be convicted in a court which has jurisdiction over the matter. See ***Yellowbear v.Wyoming Atty Gen***, 525 F3d 921, 924 (10th Cir 2008) ("Absence of jurisdiction in the convicting court is indeed a basis for federal habeas corpus relief cognizable under the due process clause.")

jurisdiction on a sovereign with respect to crimes committed by or against Indians or in Indian country (See US Const. Article I § 8), (2) it involves violation of the Supremacy Clause of the United States Constitution (See US Const. Article VI § 2), and (3) it involves action that is tantamount to the suspension of habeas corpus in violation US Const. Article I § 9.[5]

AEDPA "places new constraint[s] on the power of a federal habeas corpus with respect to claims adjudicated on the merits in state court." (***Williams v. Taylor***, 529 US 362, 412) In the instant case, the state courts failed to rule on the merits of Petitioner's claims. Time-barring Petitioner application for writ of habeas corpus would be tantamount to granting jurisdiction to a court that Congress had denied jurisdiction to, thereby violating the Supremacy Clause and Article I § 8 of the Constitution. Also, such a time-bar would effectively suspend habeas corpus relief, denied by the state courts, to not only Petitioner, but also all others similarly situated.

Petitioner has diligently pursued his jurisdictional claims from the moment that Tenth Circuit Court of Appeals announced that the Muscogee (Creek) Nation reservation continued to exist in ***Murphy v. Royal***, 875 F.3d 896 (10th Cir. 2017).

## OKLAHOMA DOES NOT HAVE JURISDICTION

According to the United States Constitution, Congress has exclusive and plenary power to confer jurisdiction to a government over an Indian reservation. (US Const., art. I § 8) (***Ex parte Wilson***, 140 US 575, 577 (1891)(Only Congress has "power... to provide for the punishment of all offenses committed [on Indian reservations], by whomsoever committed.") Congress exercises this power through treaty ratification or enactment of federal statute.

---

[5] Petitioner notes that had the judges, prosecutors and defense attorneys across Oklahoma known that the Five Tribes reservations were intact and extant, certainly someone over the last 100 years would have made a jurisdictional claim.

5

### A. Treaties

The United States Constitution declares that a federal treaty, including an Indian treaty, and just like a federal statute, is "the supreme law of the land." (US Const., art. VI § 2) Treaties, therefore are superior to state constitutions and state statute. (*Id*) If a state law conflicts with the provisions of a treaty, the treaty prevails.

Additionally, ambiguities in treaties must be resolved in favor of the Indians. (***Bryan v. Itasca County, Minnesota***, 426 U.S. 373, 392 (1976)) Treaties must be interpreted, as the Indians would have understood them at the time the treaty was signed. (***Choctaw Nation v. Oklahoma***, 397 U.S. 620, 631 (1970)). Finally, treaties must be construed liberally in favor of the Indians. (***Oneida County v. Oneida Indian Nation***, 470 U.S. 226, 247 (1985).

With these legal standards in mind, the Treaty of Cherokee Nations states in relevant part:

> "The United States hereby covenant and agree that the lands ceded to the Cherokee Nation ... shall, *in no future time*, without their consent, be included, within the territorial limits or *jurisdiction* of any State or Territory." [Article 5, Treaty of New Echota, 7 Stat. 478 (1835))]

> "That the judicial tribunals of the nation shall be allowed to retain exclusive jurisdiction in all civil and criminal cases arising within their country ... *where the cause of action shall arise in Cherokee Nation...*" [Article 13, Treaty of Washington, 14 Stat. 799 (1866]

In the 1866 Treaty of Washington, which affirmed the treaty provisions, provided for tribal membership for former Cherokee Nation slaves and others of African descent living in Cherokee Nation (Article 2, Treaty of Washington, *supra*) and provides for the authority of a

6

general council of the so-called Five Civilized Tribes for "the administration of justice" among tribal members, members from other tribes and "person other than Indian."

Both Treaties were signed long before Oklahoma statehood. So, the only understanding the Cherokee Indians could have had with respect to the meaning of these treaties at the time of their signing is that jurisdiction, whether in civil or criminal cases, regardless of the victim or perpetrator, that arise within the boundaries of Cherokee Nation reservation, rests exclusively with the Tribe, with some oversight from the United States. Additionally, Cherokee tribal members were protected from state law even when they are accused of crimes committed outside reservation boundaries. Clearly, the treaties make no provision for Oklahoma or any other State to exercise jurisdiction over crimes committed within Cherokee Nation boundaries.

### B. Federal Statutes

As stated above, the Supremacy Clause of the Constitution (US Const., art. VI § 2) states that federal treaties and federal statutes are the supreme law of the land. Acts of Congress may prescribe or limit a government's jurisdiction over crimes committed on an Indian reservation. With respect to jurisdiction over the Cherokee Nation reservation, Congress has acted a number of times. First, Congress declared that major crimes committed by or any crime committed against Indians on the reservation must be tried by the federal government exclusively. (See 18 USC § 1152-1153) Second, non-major crimes committed and domestic violence crimes occurring on the reservation may be tried by either the Tribe or the United States, but exclusive of state jurisdiction. (25 USC § 1301, 1304) Third, in the Oklahoma Enabling Act, 34 stat 267, Congress reserved jurisdiction over Indian reservations to the United States. Fourth, Congress

7

passed the Oklahoma Indian Welfare Act, which provides for the full restoration of tribal government for tribes in Oklahoma.[6] Fifth, in 1953, Congress passed Public Law 280, which authorizes a pathway for States to acquire jurisdiction over Indian reservations within the State's borders. However, Oklahoma never avails itself of this opportunity.

Neither the State, the Supreme Court held in ***Worcester v. Georgia***, 31 US 515 (1832), nor federal government, the Court held in Ex parte Crow Dog, 109 US 556 (1883), may exercise criminal jurisdiction over crimes committed on the reservation unless Congress has expressly conferred that power. Nothing in these acts confers jurisdiction to Oklahoma over any Indian reservation or crimes committed therein, as in the instant case.

However, a State may exercise criminal jurisdiction over non-Indians who commit crimes against other non-Indians on the reservation, provided no treaty stipulation or federal statute declares otherwise. (***US v. McBratney***, 104 US 621 (1881)) Oklahoma could not have acquired jurisdiction over non-Indian-against-non-Indian crimes on the Cherokee Nation reservation because the Oklahoma Enabling Act reserved such jurisdiction to the United States (***McGirt v. Oklahoma***, 140 S. Ct. 2452 (2020) and the treaties between the United States and Cherokee Nation reserve jurisdiction to the Tribe and/or the United States. Oklahoma's constitution itself cedes such jurisdiction to the United States. (OK Const, art I § 3)

Therefore, the only conclusion is that Oklahoma and her courts are without jurisdiction to prosecute criminal cases regarding alleged crimes occurring on an Indian reservation. As the Tenth Circuit said in ***US v. Magnan***, 622 Fed Appx 719 (2015), "accordingly, when a court 'assume[s] a jurisdiction which in fact it could not take…all the proceedings in that court must

---

[6] "It will be observed that its 1st section provides that nothing in the constitution of the new state shall be construed ' to limit or affect the authority of the government of the United States to make any law or regulation respecting such Indians, their lands, property, or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if this act had never been passed.'" ***Ex parte Webb***, 225 US 663 (1912)

go for naught' *Riverdale Cotton Mills v. Ala & Ga Mfg Co*, 198 US 188, 195 (1905)." In other words, any conviction pronounced by an Oklahoma court regarding a crime alleged to have occurred at a location within the boundaries of the Cherokee Nation are *void ab initio* as a matter of law and are of no legal effect. (*Johnson v. Zerbst*, 304 US 458, 468 (1938) ("The judgment of conviction pronounced by a court without jurisdiction is void"))

### The Effect of Matloff

The Oklahoma Court of Criminal Appeals held in *Matloff v. Wallace*, 2021 OK CR 23, that *McGirt* may not be applied through a post-conviction proceeding to void a conviction that is final, i.e. exhausted the direct appeal process. However, *Matloff* should not be applied to post-conviction proceedings involving a claim of lack of jurisdiction due to treaty provision or federal statutes for three primary reasons: (1) such a conviction is not final within the meaning of the law, (2) *Matloff* contradicts US Supreme Court precedent and, (3) *Matloff* must operate prospectively only.

First, as described above, the state district court is without jurisdiction in cases that occur within the boundaries of the Cherokee Nation reservation; a fact that would clearly appear on the face of the record of the case. Accordingly, any conviction pronounced by a state court regarding such a criminal case would be void ab initio and therefore not a conviction under law. Such "conviction" then could never be final under *Matloff* since the conviction does not actually exist.

Second, the US Supreme Court held in *__Montgomery v. Louisiana__*, 136 S. Ct. 718 (2016), "where state collateral review proceedings permit prisoners to challenge the lawfulness of their confinement, States cannot refuse to give retroactive effect to a substantive constitutional right that determines the outcome of that challenge." No constitutional right is substantive and fundamental than the right to be tried in a court of competent jurisdiction. As early as 1816, the High Court said, "States may not disregard a controlling constitutional command in their own courts." *__Martin v. Hunter's Lessee__*, 1 Wheat 304, 340-41; *See also* *__Yates v. Aiken__*, 484 US 211, 218 (1988)

*__McGirt__* asked and answered only one substantive fact question: Does the Muscogee (Creek) Nation reservation continue to exist? Using a procedural rule established in *__Solem v. Bartlett__*, 465 US 463 (1984), the US Supreme Court determined, yes, the reservation continues to exist and had not be disestablished by Congress. No law changed. How the law is to be applied was not changed. The High Court then applied clearly established federal law to determine that Oklahoma did not have jurisdiction over McGirt's alleged crimes. A different outcome does not result in a "new rule" for state or federal law purposes.

Third, *__Matloff__* itself should only be applied, if at all, prospectively to post-conviction proceedings filed after the OCCA decision was handed down and the mandate issued. *__Matloff__* applied retroactively would be tantamount to an ex post facto law constitutional violation. (US Const., Art. I § 10); ( Ferrell v. State, 902 P2d 1113)( It is a general rule of law in Oklahoma that decisions of the highest court are prospective in application unless specifically declared to have retroactive effect).

10

I declare under penalty of perjury that the foregoing is true and correct and that I placed a true and correct copy of the same in the prison mailing system addressed to Caroline Hunt, AAG, 313 NE 21st Street, Oklahoma City, OK 73105 on the 30th day of March, 20 22, postage prepaid.

                                                  DJuan Jackson #404771
                                                  Signature of Petitioner
                                                  JCCC Unit 4W
                                                  216 N. Murray Street
                                                  Helena, OK 73741
                                                  (572) 568-6000

US POSTAGE $001.56
ZIP 73741
MAR 31 2022

postmark 3/31/22

RECEIVED
APR 04 2022
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

US District Court
for Northern OK
333 W. 4th Street
Tulsa, OK 74103

JCCC LEGAL MAIL

DJuan Jackson 404717/4W
J.C.C.C
216 N. Murray st
Helena, OK 73741

21cv554 JFHSH